# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| JAMES LEE DORSEY, ) | |
| ) | |
| Plaintiff, ) | |
| ) | No. 16-cv-07884 |
| v. ) | |
| ) | Judge Andrea R. Wood |
| SALEH OBAISI, et al., ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff James Lee Dorsey is an inmate at Stateville Correctional Center ("Stateville"), where Defendant Wexford Health Sources, Inc. ("Wexford") provides healthcare services. Since 2008, Dorsey allegedly has suffered from a variety of medical issues, including severe groin pain and bloody stools. Dorsey claims that he complained of these symptoms to Wexford employees, including Defendants Dr. Saleh Obaisi, Dr. Alma Martija, and LaTanya Williams (together, "Individual Defendants"), but they failed to treat him. Dorsey has brought suit against Wexford and the Individual Defendants asserting claims for deliberate indifference to his serious medical needs in violation of the Eighth Amendment to the United States Constitution, pursuant to 42 U.S.C. § 1983, and common law intentional infliction of emotional distress ("IIED"). Now before the Court are Defendants' motions to dismiss Dorsey's complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). (Dkt. Nos. 38, 41, 66, 112.) For the reasons set forth below, Williams's motion is granted, Dr. Obaisi's and Dr. Martija's motions are denied, and Wexford's motion is granted in part and denied in part.

**BACKGROUND**

For the purposes of Defendants' motions to dismiss, this Court accepts as true the well-pleaded facts in the First Amended Complaint ("FAC," Dkt. No. 20) and views them in the light most favorable to Dorsey. *See Firestone Fin. Corp. v. Meyer*, 796 F.3d 822, 826–27 (7th Cir. 2015).

Dorsey has been an inmate at Stateville since 2009. (FAC ¶ 9.) Wexford has contracted with the Illinois Department of Corrections to provide healthcare services to inmates at Stateville. (*Id.* ¶ 5.) The Individual Defendants are all Wexford employees who were acting within the scope of their employment when interacting with Dorsey. (*Id.* ¶¶ 6–8.) Dr. Obaisi and Dr. Martija are physicians, and Williams is a nurse practitioner. (*Id.*)

Over the last decade, Dorsey has repeatedly complained to the Individual Defendants about a variety of medical issues, including but not limited to "(1) sharp pains and tenderness in his stomach and chest; (2) swelling in both legs; (3) heart palpitations; (4) dizziness; (5) pain and tenderness below each nipple; (6) shortness of breath; and (7) severe groin pain accompanied by bright red blood in his stool." (*Id.* ¶¶ 10–11.) For example, on multiple occasions since 2008, Dorsey has experienced bloody stools lasting several days. (*Id.* ¶ 22.) Dorsey has a family history of colon cancer, so he repeatedly requested a colonoscopy to determine the cause of the bloody stools. (*Id.* ¶¶ 22–24.) However, his requests were consistently denied. (*Id.* ¶ 25.) Also, in 2009 and 2010, Dorsey had X-rays taken of his lower back, which displayed two dark spots in the area where he was suffering from groin pain. (*Id.* ¶ 19.) Dorsey again made multiple requests for follow-up testing, including but not limited to an ultrasound exam to examine the dark spots further, to no avail. (*Id.* ¶¶ 20–21.)

In 2014 and 2015, Dr. Obaisi prescribed Flomax to Dorsey to treat his groin pain. (*Id.* ¶ 13.) When Dorsey saw Dr. Martija on April 22, 2015, he complained about his groin pain and informed her that Dr. Obaisi had previously prescribed him Flomax. (*Id.* ¶ 15.) Dr. Martija replied that Flomax would not relieve Dorsey's groin pain and refused to explain further. (*Id.* ¶¶ 16–17.) Dorsey was then escorted away from the healthcare unit at Stateville. (*Id.* ¶ 18.)

## DISCUSSION

To survive a Rule 12(b)(6) motion, "a complaint must contain sufficient factual allegations, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). This pleading standard does not necessarily require a complaint to contain detailed factual allegations. *Twombly*, 550 U.S. at 555. Rather, "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Adams v. City of Indianapolis*, 742 F.3d 720, 728 (7th Cir. 2014) (quoting *Iqbal*, 556 U.S. at 678).

In his amended complaint, Dorsey asserts two claims against all Defendants: a § 1983 claim for deliberate indifference and a common law claim for IIED. Each of the four Defendants has filed a motion to dismiss. Dr. Obaisi and Dr. Martija seek to dismiss only Count II—the IIED claim—while Williams and Wexford seek to dismiss Count I as well.

### I. Williams's and Wexford's Motions to Dismiss Count I

In Count I, Dorsey asserts a claim pursuant to § 1983 for deliberate indifference to his medical needs. The Eighth Amendment, through the Fourteenth Amendment, imposes a duty upon states to provide adequate medical care to incarcerated individuals. *See, e.g.*, *Johnson v. Doughty*, 433 F.3d 1001, 1010 (7th Cir. 2006). "To determine if the Eighth Amendment has been

violated in the prison medical context, [the Court] perform[s] a two-step analysis, first examining whether a plaintiff suffered from an objectively serious medical condition, and then determining whether the individual defendant was deliberately indifferent to that condition." *Petties v. Carter*, 836 F.3d 722, 727–28 (7th Cir. 2016).

Here, Williams argues that Dorsey has not alleged with specificity how she acted with deliberate indifference. Dorsey, for his part, relies on his allegations that he was treated by "each of the named defendants" and that he complained to "the medical staff" about his symptoms. But Dorsey's vague allegations do not satisfy the requisite pleading standards: to survive a motion to dismiss, a complaint must "specify which defendants were responsible for which allegedly unlawful acts." *Dabbs v. Peoria Cty., Ill.*, 690 Fed. Appx. 416, 417 (7th Cir. 2017).[1] While Dorsey describes particular interactions with Dr. Obaisi and Dr. Martija, (*see* FAC ¶¶ 13–16), he does not describe any interactions with Williams. Because Dorsey has not given her "fair notice of what the . . . claim is and the grounds upon which it rests," his deliberate indifference claim is dismissed as to Williams. *Twombly*, 550 U.S. at 555.

Williams also advances a statute of limitations argument for dismissal with prejudice. That a claim is barred by the applicable statute of limitations is an affirmative defense, which the defendant has the burden of proving. *Law v. Medco Research, Inc.*, 113 F.3d 781, 786 (7th Cir. 1997). A motion to dismiss based on an expired statute of limitations must be denied unless the plaintiff's allegations clearly indicate that the action is untimely. *See Sidney Hillman Health Ctr. of Rochester v. Abbott Labs., Inc.*, 782 F.3d 922, 928 (7th Cir. 2015) (cautioning that the "irregular" approach of dismissing a complaint as untimely is appropriate "only where the

---

[1] *Dabbs* is an unpublished Seventh Circuit order issued after January 1, 2007. Although not precedential, the order's reasoning is persuasive and provides a useful point of comparison here. *See* Fed. R. App. P. 32.1(a); 7th Cir. R. 32.1(b).

allegations of the complaint itself set forth everything necessary to satisfy the affirmative defense" (internal quotation marks omitted)). Here, as Williams concedes, Dorsey has not pleaded with specificity any facts as to Williams's deliberate indifference, including the relevant timeframe. It naturally follows that Dorsey's complaint does not contain the necessary information to justify dismissal based upon the statute of limitations. Indeed, Williams admits that it is "difficult to determine when the statute of limitations period began to run" but nonetheless argues that "the Court could determine that Plaintiff became aware of his injury in 2009." (Mem. of Law in Support of LaTanya William's [*sic*] Mot. to Dismiss Counts I and II of Pl.'s First Am. Compl. at 5–6, Dkt. No. 39.) But the Court cannot and will not make such a finding of fact at this stage in the proceedings. *See Early Bankers Life & Cas. Co.*, 959 F.2d 75, 80 (7th Cir. 1992) ("[W]hen a complaint is dismissed at the pleadings stage the question is not what are the facts, but is there a set of facts that if proved would show the case had merit?").

Moreover, the Court rejects Williams's statute of limitations argument to the extent that it is based on Dorsey's discovery of his bloody stools or the dark spots on his X-ray results. As a general rule, a § 1983 claim accrues when the plaintiff learns that "he has been ***injured*** and who ***caused*** the injury." *Barry Aviation Inc. v. Land O'Lakes Mun. Airport Comm'n*, 377 F.3d 682, 688 (7th Cir. 2004) (emphasis in original). However, the applicable injury is Dorsey's alleged constitutional injury, not his physical injury. *See Haywood v. Champaign Cty., Ill.*, 596 Fed. Appx. 512, 513 (7th Cir. 2015) ("The statute of limitations begins running when a plaintiff knew or should have known that ***his constitutional rights had been violated***." (emphasis added)).[2] It is entirely plausible that the alleged deliberate indifference did not occur when Dorsey discovered

---

[2] *Haywood* is another unpublished Seventh Circuit order issued after January 1, 2007, which the Court uses to provide a useful point of comparison here.

his serious medical needs but rather later on, when Dorsey sought and was refused treatment. Therefore, Williams' motion to dismiss is granted as to Count I, but not based on the statute of limitations and without prejudice.

As to Wexford's motion to dismiss Count I, Dorsey concedes that he has not stated a § 1983 claim against Wexford in the FAC but requests the opportunity to renew the claim should sufficient evidence be uncovered during discovery. (*See* Pl.'s Mem. of Law in Resp. to Def. Wexford Health Sources, Inc.'s Mot. to Dismiss Pl.'s First Am. Compl. at 2, Dkt. No. 95.) While Wexford requests that Count I be dismissed against them with prejudice, the Court recognizes the possibility that Dorsey might be able to amend his complaint to state a valid *Monell* claim against Wexford. Therefore, Wexford's motion to dismiss Count I is granted without prejudice.

## II.     Defendants' Motions to Dismiss Count II

Common to all Defendants' motions to dismiss is the argument that Count II, Dorsey's IIED claim, fails to assert sufficient facts. To state a claim for IIED in Illinois, a plaintiff must plead that: (1) Defendants' conduct was "truly extreme and outrageous," (2) Defendants intended or knew that there was "at least a high probability that [their] conduct [would] cause severe emotional distress," and (3) the conduct in fact caused "***severe*** emotional distress." *Feltmeier v. Feltmeier*, 798 N.E.2d 75, 80 (Ill. 2003) (emphasis in original) (internal quotations omitted). As explained above, the FAC contains no factual allegations regarding Dorsey's interactions with Williams. Thus, the Court grants Williams' motion to dismiss Count II for failure to state a claim against her.

As for Dr. Obaisi and Dr. Martija, the FAC contains specific allegations about the medical care they provided to Dorsey. Specifically, Dorsey has alleged that Dr. Obaisi prescribed him Flomax in 2014 and 2015 after he complained about severe groin pain, even though Flomax was

not an appropriate treatment. (FAC ¶¶ 13–16.) As to Dr. Martija, Dorsey has alleged that in 2015, he complained to her about his groin pain, but she refused to answer his questions or treat him. (*Id.* ¶¶ 15–18.) Still, as Dr. Obaisi and Dr. Martija correctly point out, a court may dismiss an IIED claim if the alleged conduct is not sufficiently extreme and outrageous. *See Cook v. Winfrey*, 141 F.3d 322, 332 (7th Cir. 1998). "To meet the 'extreme and outrageous' standard, the defendants' conduct 'must be so extreme as to go beyond all possible bounds of decency, and to be regarded as intolerable in a civilized community.'" *Swearnigen-El v. Cook Cty. Sheriff's Dep't*, 602 F.3d 852, 864 (7th Cir. 2010) (citing *Kolegas v. Heftal Broad. Corp.*, 607 N.E.2d 201, 211 (Ill. 1992)). In determining whether alleged conduct meets this standard, courts consider three main factors: the power or control that the defendant had over the plaintiff, whether the defendant reasonably believed his objective was legitimate, and whether the defendant was aware that the plaintiff was particularly susceptible to emotional distress. *See Franciski v. Univ. of Chi. Hosp.*, 338 F.3d 765, 769 (7th Cir. 2003).

Dorsey has pleaded that Dr. Obaisi and Dr. Martija engaged in extreme and outrageous conduct by repeatedly failing to treat his multi-faceted symptoms, which caused him to experience prolonged pain and suffering. Considering Dorsey's status as a prisoner, Defendants had a significant degree of control over his ability to obtain medical care. In addition, Defendants allegedly knew Dorsey was susceptible to emotional stress based on his repeated complaints of pain and requests for treatment and their repeated denial of those requests. *See Cobige v. City of Chi.*, 2009 WL 2413798, at *13 (N.D. Ill. Aug. 6, 2009) (drawing "reasonable inference that Defendants knew [Plaintiff] was susceptible to emotional stress due to her extreme abdominal pain and constant requests for medical care"). Further, other courts in this District have held that denying medical care to prisoners may qualify as extreme and outrageous conduct. *See, e.g.*,

7

*Awalt v. Marketti*, 74 F. Supp. 3d 909, 942 (N.D. Ill. 2014) (denying summary judgment on IIED claim and finding that reasonable jury could conclude defendants' alleged failure to treat plaintiff-prisoner's seizures was extreme and outrageous); *Liebich v. Hardy*, 2013 WL 4476132, at *14 (N.D. Ill. Aug. 19, 2013) (denying motion to dismiss IIED claim where plaintiff alleged defendants' "repeated denials to provide prescribed medications, failure to refer plaintiff to a specialist because of cost concerns, unnecessary delay in emergency treatment, and disregard of plaintiff's alleged acute pain" constituted extreme and outrageous conduct). Considering the relevant factors, the Court cannot conclude at the pleadings stage that, as a matter of law, Defendants' failure to treat Dorsey's symptoms adequately did not amount to extreme and outrageous conduct.

Dorsey also has pleaded the other two elements of a viable IIED claim: that Defendants "acted with knowledge of the high probability that the conduct would cause[] emotional distress" and that their conduct caused him "severe emotional distress, resulting in injury to his mind and body, including mental anguish, severe pain, and emotional suffering." (Compl. ¶¶ 36, 38.) Such allegations are sufficient to survive a motion to dismiss. Until the parties have the opportunity for further factual development, the Court will not hold that Dorsey's allegations are legally insufficient to state a claim for IIED against Dr. Obaisi and Dr. Martija.

Turning to Wexford, the company advances a similar argument for dismissal as Williams: that Dorsey has not alleged any facts showing that Wexford engaged in extreme and outrageous conduct. Indeed, the amended complaint does not contain sufficient allegations to support direct liability for IIED against Wexford. But Dorsey's IIED claim against Wexford appears to be based in the doctrine of *respondeat superior*, which provides that "an employer can be held liable for the torts of his employee when those torts are committed within the scope of the employment."

*Adames v. Sheahan*, 909 N.E.2d 742, 733 (Ill. 2009). As explained above, Dorsey has adequately pleaded that Dr. Obaisi and Dr. Martija intentionally inflicted emotional distress upon him. Moreover, Dorsey has pleaded that Wexford acted through them as its employees and agents, and that Dr. Obaisi and Dr. Martjia were acting "within the scope of [their] employment." (FAC ¶¶ 5–7.) While plaintiffs typically set forth a separate claim in their complaints clearly indicating that they are proceeding under a *respondeat superior* theory, failure to plead in that manner is not necessarily fatal where, as here, the plaintiff has given the defendant fair notice that he is asserting his IIED claim based upon a *respondeat superior* theory of liability. *See, e.g.*, *Hardy v. Hardy*, 2013 WL 5325077, at *4 (N.D. Ill. Sept. 20, 2013). Therefore, the Court will not dismiss Count II against Wexford for failure to state a claim.

Finally, Defendants argue that Dorsey's IIED claim presents allegations of medical malpractice and thus he is required to file an affidavit from a medical professional indicating that his case has merit. But the key inquiry in an IIED claim is whether Defendants' action would lead "an **average member of the community** . . . to exclaim: Outrageous!" *Honaker v. Smith*, 256 F.3d 477, 490 (7th Cir. 2001) (emphasis added) (internal quotation marks omitted). The law does not require Dorsey to prove that a medical professional would react that way. *Hardy v. Wexford Health Sources, Inc.*, 2015 WL 6701764, at *5 (N.D. Ill. Nov. 2, 2015) ("A doctor's expertise in describing the application of the relevant standard of medical care for medical malpractice to the particular facts of the case is not necessary to determine whether an average member of the community would find certain conduct outrageous."). And other courts in this District have squarely and consistently rejected this argument. *See, e.g.*, *Hardy*, 2015 WL 6701764, at *5; *Awalt v. Marketti*, 2012 WL 1161500, at *3 (N.D. Ill. Apr. 9, 2012); *Fox v. Ghosh*, 2010 WL

345899, at *2–3 (N.D. Ill. Jan. 26, 2010). The Court will not dismiss Dorsey's otherwise well-pleaded IIED claim simply because he did not submit an accompanying certification.

## CONCLUSION

For the foregoing reasons, Williams's motion to dismiss is granted in its entirety, Dr. Obaisi's and Dr. Martija's motions to dismiss are denied, and Wexford's motion to dismiss is granted as to Count I but denied as to Count II. The dismissals are without prejudice. Dorsey is granted leave to refile a second amended complaint by March 29, 2019.

Dated: March 19 , 2019

Andrea R. Wood
United States District Judge